# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
### Judge William J. Martínez

Civil Action No. 12-cv-0780-WJM-MJW

CYNTHIA MITCHELL,

    Plaintiff,

v.

MICHAEL MANZER,

    Defendant.

---

## FINAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

---

Plaintiff Cynthia Mitchell ("Plaintiff") brings this personal injury action against Defendant Michael Manzer ("Defendant"). (Compl. (ECF No. 1).) As a result of Defendant's failure to defend, Plaintiff's Motion for Default Judgment was granted with respect to liability on May 3, 2013. (ECF No. 43.) An evidentiary hearing on the issue of damages was held on March 12, 2014. (ECF No. 64.) Plaintiff testified on her own behalf, and called the following as witnesses: Dr. Mark Bronsky, Dr. Brian Apatoff, Danielle Grafas, and Lauren Margiano. (ECF No. 66.) Defendant did not appear at the hearing. (*Id.*) The following are the Court's final findings of fact and conclusions of law with respect to the award of damages.

## I. FINDINGS OF FACT

**A.  The Collision**

1. On February 24, 2012, Plaintiff was skiing in Breckenridge, Colorado on a ski vacation with several members of her family and friends, including her stepsister, Danielle Grafas. (Testimony of Plaintiff; Testimony of Danielle Grafas.)

2. Plaintiff was slowly traversing the slope toward the chairlift at the end of a ski run when Defendant, who was descending the run behind Plaintiff at a high speed, collided with her (the "Collision"). (Testimony of Danielle Grafas.) Due to Plaintiff's location next to the edge of the groomed trail, Plaintiff was thrown off of the edge of the trail, down an embankment, and into deep snow. (*Id.*)

3. Plaintiff was rendered unconscious and was initially unresponsive. Blood and fragments of teeth were in and around her mouth. (*Id.*)

4. The ski patrol transported Plaintiff to the Breckenridge Medical Center, and Plaintiff was then taken by ambulance to St. Anthony Summit Medical Center in Frisco, Colorado (the "Hospital"). (*Id.*)

5. When Plaintiff arrived at the Hospital, she was diagnosed with the following injuries: subarachnoid hemorrhage status post blunt trauma, left mandibular body and parasymphysis sagittal fracture, dental alveolar fractures of teeth numbers 9, 23, and 24, fracture of tooth number 10, and intraoral laceration of the left mandibular buccal vestibule. (Ex. 3; Testimony of Dr. Bronsky.) In layman's terms, these injuries included a traumatic brain injury, a shattered jaw, and four broken teeth. (Testimony of Dr. Bronsky; Testimony of Dr. Apatoff.)

6. Plaintiff received surgery at the Hospital as a result of her injuries, which included the insertion of screws into her jaw and the use of arch bars on her teeth to tether her jaw shut. This surgery was necessary to stabilize and permit her jaw and teeth to heal successfully, and to subsequently function normally. (Testimony of Dr. Bronsky.)

7. In total, Plaintiff has incurred $150,716.32 in necessary medical expenses as a result of the Collision. (Exs. 5, 5a-5p; Testimony of Plaintiff.)

**B.  Orthodontic Treatment After Collision**

8. Plaintiff's jaw was tethered shut for approximately three months after the Collision, during which time she could not talk normally and was required to eat a purely liquid diet. (Testimony of Plaintiff; Testimony of Dr. Bronsky.)

9. For more than a year and a half after the Collision, Plaintiff required specialized braces and used customized retainers on her teeth to maintain the alignment of her teeth and jaw. (Ex. 6; Testimony of Dr. Bronsky.) Plaintiff will need to use customized retainers for the rest of her life. (Testimony of Dr. Bronsky.)

10. The screws in Plaintiff's jaw will remain there permanently, and could move and cause future orthodontic problems. (Testimony of Plaintiff.)

11. Plaintiff will require future appointments with an orthodontic specialist approximately twice yearly, and will need to use two customized retainers, replaced approximately every two years, for the rest of her life. Orthodontic visits normally cost between $400 and $500 each, and retainers normally cost between $800 and $900 each. (Testimony of Dr. Bronsky.)

12. Plaintiff has a life expectancy of an additional 41.6 years. (Colo. Rev. Stat. § 13-25-103.) Accordingly, Plaintiff will likely incur $33,280–$41,600 on future orthodontic visits, and $33,280–$37,440 on future retainers as a result of the Collision.

### C. Neurological Treatment After Collision

13. Dr. Apatoff, Plaintiff's treating neurologist, examined her a week after the Collision and diagnosed her with severe traumatic brain injury and post-concussive brain syndrome resulting from the Collision.  (Testimony of Dr. Apatoff.)  Her symptoms from the brain injury included balance problems and ataxic gait, tremor and dysmetria (motor impairments), difficulties with focus and multitasking, and memory recall impairment.  (*Id.*)

14. Plaintiff attended physical therapy for her balance problems and left side weakness, and went back to work part-time within a few weeks of the Collision as therapy to improve her cognitive functioning.  (Testimony of Plaintiff.)

15. Plaintiff will require regular MRI monitoring over the next several decades to ensure that there are no additional complications or neurological deterioration.  This monitoring will include another four to five MRIs over the next two decades, at a cost of approximately $2,500 per MRI, for a total of $10,000–$12,500.  (Testimony of Dr. Apatoff.)

### D. Pain, Suffering, and Cognitive Impairment After Collision

16. Plaintiff is 37 years old and is a real estate attorney residing in New York City.  (Testimony of Plaintiff; Testimony of Lauren Margiano.)

17. In the initial weeks after the Collision, Plaintiff suffered from headache, neck pain, dizziness, lack of balance, weakness on her left side, nausea, and memory problems.  (Testimony of Dr. Apatoff.)  Due to her difficulties with her memory and balance, Plaintiff was unable to walk by herself, drive, or take a train, and needed constant assistance to care for herself.  (Testimony of Plaintiff.)

18. When Plaintiff first returned to work, her mouth was still tethered shut and she had difficulty speaking, making it difficult for her to communicate with clients over the phone. (Testimony of Plaintiff.) When interviewing for a new employer, Plaintiff had to attend a recruitment dinner with her mouth tethered shut, preventing her from participating in conversation or eating any food. (*Id.*)

19. Initially, Plaintiff had severe memory problems, resulting in her forgetting entire conversations with clients and inadvertently repeating herself. These problems made Plaintiff nervous and apprehensive about her work performance. (Testimony of Plaintiff.) Plaintiff's memory problems have also affected her socially, leading her both to miss social engagements she intended to attend, and to forget about social engagements she attended shortly after they occurred. (*Id.*)

20. Although many of Plaintiff's neurological symptoms have improved, Plaintiff continues to have difficulty with memory recall, multitasking, focus, balance, and left side weakness. (Ex. 20; Testimony of Dr. Apatoff; Testimony of Plaintiff.) As a result, Plaintiff continues to worry about her work performance, and her memory problems continue to frustrate her in her professional and social life. (Testimony of Plaintiff.)

21. Plaintiff is not likely to recover further from her brain injury, and will likely have her current cognitive impairments for the rest of her life. (Testimony of Dr. Apatoff.)

## II. CONCLUSIONS OF LAW

Plaintiff brings this action pursuant to Colorado Revised Statutes §§ 33-44-109(2) and (5), contending that Defendant is responsible for her injuries and damages because his negligence caused the Collision. (ECF No. 1 at 2-3.)

On March 4, 2013, United States Magistrate Judge Michael J. Watanabe entered a Recommendation that Plaintiff's Motion for Entry of Default be granted based on Defendant's failure to defend. (ECF No. 34.) On May 1, 2013, the Court adopted the Recommendation and found that Defendant was liable to Plaintiff on her claims for negligence. (ECF Nos. 42 & 43.) Accordingly, the only question remaining before the Court is the amount of damages to which Plaintiff is entitled.

To recover in a negligence action under Colorado law, the plaintiff must prove that the damage would not have occurred but for the defendant's negligent conduct. *Kaiser Found. Health Plan of Colo. v. Sharp*, 741 P.2d 714, 719 (Colo. 1987). Available categories of damages include: (1) economic damages, including medical expenses that are reasonable in amount and medically necessary, *see Kendall v. Hargrave*, 349 P.2d 993, 994 (Colo. 1960); (2) non-economic damages, including pain and suffering, *see Van Schaack & Co. v. Perkins*, 272 P.2d 269, 272 (1954); *see also* Colo. Rev. Stat. §§ 13-21-102.5(3) (limiting such non-economic damages to a maximum of $468,010); and (3) physical impairment or disfigurement damages, *see Cooley v. Paraho Dev. Corp.*, 851 P.2d 207, 210 (Colo. Ct. App. 1992); *see also* Colo. Rev. Stat. § 13-21-102.5(5) (cap on non-economic damages not to be construed to limit separate damages for physical impairment or disfigurement).

As discussed above, the Court has found that Plaintiff has incurred $150,716.32 in past economic damages for medical expenses, which expenses were caused by the Collision and were both reasonable and medically necessary. The Court has also found that Plaintiff will incur between $76,560–$91,540 in future necessary medical expenses

6

as a result of the Collision.  Taking the midpoint of the estimated range of Plaintiff's future medical expenses, $84,050, the Court finds that Plaintiff has past and future economic damages of $234,766.32.

As to non-economic damages, the Court notes that Plaintiff's Preliminary Proposed Findings of Fact and Conclusions of Law proposed a total of $300,000 in non-economic damages, and proposed no damages for physical impairment or disfigurement. (*See* ECF No. 58 at 4.)  However, in Plaintiff's Final Proposed Findings of Fact and Conclusions of Law, submitted after the hearing, Plaintiff proposed $234,005 in past non-economic damages, $234,005 in future economic damages, $100,000 in past physical impairment damages, and $100,000 in future physical impairment damages, for a total of $668,010.  (ECF No. 67 at 10.)  That is, Plaintiff's request for damages other than medical expenses has more than doubled since the filing of her Preliminary Proposed Findings and Conclusions.

Although it was appropriate for Plaintiff to amend her proposed amounts of damages based on the evidence introduced at the hearing, Plaintiff has provided no argument or explanation for the enormous increase in the amount requested.  No evidence of previously unknown or unconsidered non-economic damages was introduced at the hearing, and the facts as found by the Court based on the evidence were generally similar to those in Plaintiff's Preliminary Proposed Findings and Conclusions.  The Court finds no justification for Plaintiff's non-economic and physical impairment damages to have increased by $368,010.

Nevertheless, the Court finds that the evidence of record supports a substantial non-economic damages award, and despite Plaintiff's failure to include them in her

Preliminary Proposed Findings and Conclusions, the evidence also supports an award of damages for past and future physical impairment.  The evidence shows that the Collision had medical and mental effects that caused Plaintiff substantial pain and suffering, and Plaintiff's resulting physical impairment caused her additional physical and emotional damage.  Many of these effects, including those stemming from Plaintiff's physical impairment, will continue into the future and will last for the rest of Plaintiff's life.  Accordingly, the Court will award to Plaintiff the $300,000 she originally requested in non-economic damages, and will additionally award half of the increase in her requested amount, or an additional $84,005 in non-economic damages for a total of $384,005, as well as $100,000 in past and future physical impairment damages.

In sum, the Court finds that Plaintiff has presented sufficient evidence to meet her burden of showing that she has suffered damages in the amount of $718,771.32.  In accordance with Colorado Revised Statute § 13-21-101, Plaintiff has claimed interest on these damages from the date the action accrued, February 24, 2012, at a rate of 9%, compounding annually.  (*See* ECF No. 1 at 4.)  This yields a total of $168,287.48 in pre-judgment interest, which will be included in the judgment amount.

### III.  CONCLUSION

For the reasons set forth above, the Clerk of Court is DIRECTED to enter Default Judgment against Defendant in the amount of $887,058.80, with post-judgment interest as permitted under statute.  Plaintiff shall have her costs.

Dated this 10th day of June, 2014.

BY THE COURT:

William J. Martinez
United States District Judge